FILED

**IN THE UNITED STATES DISTRICT COURT** 2010 JUN -1  AM 9: 01
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**  CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____ (w)_____
DEPUTY

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : | |
| Plaintiff, | : | |
| v. | : | |
| RICHARD D.THEYE; and MICIND CAPITAL MANAGEMENT, INC., | : | CIVIL ACTION NO.: **A10CA 385SS** |
| Defendants. | : | COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF |

Plaintiff, Commodity Futures Trading Commission ("Commission" of "CFTC"), by its attorneys, alleges as follows:

## I. SUMMARY

1.      From at least December 2005 to December 2009 ("relevant period"), defendant Richard D. Theye ("Theye"), president, officer and agent of RYCO Group, L.L.C. ("RYCO Group"), and First RYCO, L.L.C. ("First RYCO"), fraudulently solicited members of the general public to pool together millions of dollars to trade commodity futures contracts ("futures") in violation of certain anti-fraud provisions of the Commodity Exchange Act ("CEA" or "the Act"), 7 U.S.C. §§ 1 *et seq.* (2006); the Act, as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), § 13102, 122 Stat. 1651 (enacted June 18, 2008), to be codified in 7 U.S.C. §§ 1 *et seq.*; and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1.1 *et seq.* (2009), promulgated thereunder.

2.     In order to induce current and prospective pool participants to invest or reinvest, Theye, as the unregistered commodity pool operator ("CPO") for the pools, RYCO Group and First RYCO (collectively, the "RYCO pools" or "commodity pools"), made numerous material misrepresentations and omissions, and employed a scheme to defraud current and prospective pool participants by, among other things:

    a.  Falsely representing at face-to-face church meetings, among other places, as well as in advertising flyers and newsletters, the RYCO pools' purported historical profitability, when, in fact, (1) Theye misappropriated the majority of pool participants' funds to further a Ponzi scheme, through which he paid out of participants' funds false "profits" to other victims of the scheme in order to perpetuate the scheme, and (2) what little futures trading Theye did with participants' funds on behalf of the RYCO pools has resulted in over $200,000 in pool participant losses since 2006; and

    b.  Issuing false and fictitious monthly account statements to pool participants regarding the purported "profits" of the RYCO pools.

3.     As a result, Theye, the unregistered operator of the RYCO pools (who needed to be registered with the Commission), has engaged, is engaged, or is about to engage in acts and practices in violation of Sections 4o(1) and 4m(1) of the Act, 7 U.S.C. §§ 6o(1), and 6m(1) (2006), Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006) (for conduct that occurred prior to June 18, 2008), Section 4b(a)(1)(A)-(C) of the Act, as amended, by the CRA, to be codified in 7 U.S.C. § 6b(a)(1)(A)-(C) (2009) (for conduct that occurred on or after June 18, 2008), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2009).

4.     In addition, from June 2009 through the present time, defendants Micind Capital Management, Inc. ("Micind") and Theye, president of Micind, employed a separate scheme to defraud a Micind investor, by, among other things:

    a.  Falsely representing in a joint venture agreement that, in exchange for the investor's capital contributions to Micind, Theye through Micind would "conduct" "trading" on the customer's behalf in futures, stocks, options and forex; in fact, Theye, through Micind, conducted no such trading but rather misappropriated the funds to further his Ponzi scheme; and

b.  Issuing false and fictitious account statements to the investor showing that Defendants were trading futures on the investor's behalf at a profit, when, in fact, Defendants were conducting no such trading and thus earning no such profits.

5.      As a result, Micind and Theye have engaged, are engaged, or are about to engage in acts and practices in violation of Section 4b(a)(1)(A)-(C) of the Act, as amended, to be codified in 7 U.S.C. § 6b(a)(1)(A)-(C).

6.      Theye, as an agent and officer of Micind, committed, is committing, or is about to commit the acts and omission described herein within the scope of his employment at and office with Micind.  Micind therefore is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2009), for violations of the Act, as amended by the CRA, committed by Theye while acting as an agent of Micind.

7.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and Regulations.  In addition, the Commission seeks civil monetary penalties and other equitable relief, including restitution to pool participants, disgorgement of Defendants' ill-gotten gains, permanent trading and registration bans, and such other relief as the Court may deem necessary or appropriate

8.      Unless permanently restrained and enjoined by the Court, Defendants are likely to continue to engage in the illegal acts and practices alleged in this Complaint, as more fully described below.

## II.  JURISDICTION AND VENUE

9.      The Act establishes a comprehensive system for regulating the purchase and sale of futures and options on futures.  The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive

relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, as amended, or any rule, regulation, or order thereunder.

10.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that the Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act, as amended by the CRA, and Regulations have occurred, are occurring, or are about to occur within this District, among other places.

## III. <u>PARTIES</u>

11.     **Plaintiff the Commodity Futures Trading Commission** is a federal independent regulatory agency charged by Congress with the administration and enforcement of the CEA, 7 U.S.C. §§ 1 *et seq.* (2006), Act, as amended by the CRA, to be codified in 7 U.S.C. §§ 1 *et seq.*, and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2009). The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C.

12.     **Defendant Richard D. Theye** is an individual who, on information and belief, is currently residing in San Diego, California. At all times relevant to this Complaint, Theye resided in Austin, Texas. Theye is the Chief Executive Officer, Operating Manager, Presiding Member and unregistered CPO of RYCO Group and First RYCO, two commodity pools. During the relevant period, Theye controlled the day-to-day operations of RYCO Group and First RYCO, including making the commodity pools' trading decisions, and opening trading accounts at a registered futures commission merchant ("FCM") in the names of the commodity pools to

trade on behalf of the commodity pools' participants.  Theye has never been registered with the Commission as a CPO or in any other capacity.

13.     **Defendant Micind Capital Management, Inc.** is a Nevada corporation, created on April 16, 1998, with its principal place of business at 1135 Terminal Way # 209, Reno, Nevada.  Micind also maintains business offices at 3445 Executive Center Drive, Ste. 110, Austin, Texas.   Theye is the President and Director of Micind.  Micind has never been registered with the Commission in any capacity.

### IV. STATUTORY BACKGROUND

14.     A "commodity pool" is defined in Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1) (2009), as any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests.

15.     A "participant" is defined in Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2009), as any person that has any direct financial interest in a pool (e.g., a limited partner).

16.     A "commodity pool operator" is defined in Section 1a(5) of the Act, 7 U.S.C. § 1(a)(5) (2006), as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

V. FACTS

A.     The RYCO Pools

17.     RYCO Group is a California limited liability company, created on November 9, 2005, with its principal place of business located at 825 Cally Court, Ste. 2, Redding, California. RYCO Group also maintains business offices at 3445 Executive Center Drive, Ste. 110, Austin, Texas. RYCO Group is a commodity pool created by Theye, in part, for the purpose of trading futures on behalf of pool participants. Theye is RYCO Group's unregistered CPO.

18.     First RYCO is a California limited liability company, created on January 23, 2006, with its principal place of business located at 825 Cally Court, Ste. 2, Redding, California. First RYCO is a commodity pool created by Theye, in part, for the purpose of trading futures on behalf of pool participants. Theye is First RYCO's unregistered CPO.

B.     Theye Opened Trading Accounts for the RYCO Pools

19.     From September 2006 through November 2008, Theye opened a total of eight (8) separate trading accounts in the name of RYCO Group at R.J.O'Brien & Associates ("RJO"), a registered FCM. In each of these trading accounts, Theye traded futures, including contracts in the S&P 500 index, the Russell index, the Dow index, and crude oil.

20.     In August 2009, Theye opened a trading account in the name of First RYCO at RJO, through which, for two months, he traded futures, including contracts in the S&P 500 index, the Russell index, and natural gas.

C.     Theye Operated the RYCO Pools as Commodity Pools

21.     The RYCO pools received, accepted and pooled money from members of the general public to trade futures through RYCO Group and First RYCO (a) beginning in December

2005 with respect to RYCO Group, and (b) beginning in March 2006 with respect to First RYCO.

22.    Theye solicited pool participants or prospective pool participants to write checks, wire monies, or transfer funds to RYCO Group's and/or First RYCO's bank account(s) at Guaranty Bank (now known as Compass Bank) located in Austin, Texas, telling them that their money would be pooled with funds from other pool participants and that Theye would use the money to trade, among other things, futures on behalf of all pool participants.

23.    After the pool participants' monies were deposited, wired, or transferred into RYCO Group's or First RYCO's bank account(s) in Austin, Texas, Theye then wired some, but not all, of the pool participants' monies from those bank accounts to the RYCO pools' trading account(s) at RJO located in Chicago, Illinois, through which Theye traded futures (a) beginning in September 2006 with respect to RYCO Group, and (b) beginning in August 2009 with respect to First RYCO.

24.    Theye had pool participants sign "Class B LLC Membership Interest Purchase Agreements" ("Purchase Agreement") in either RYCO Group or First RYCO.  In particular, for each $250 that a pool participant invested in either RYCO Group or First RYCO, he or she received one Class B membership interest in either RYCO Group or First RYCO.  Thus, for example, one pool participant invested $41,000 on January 15, 2008 in RYCO Group and in return received 164 Class B membership interests in RYCO Group.  The number of membership interests that a pool participant held in either RYCO Group or First RYCO were disclosed as units on the pool participants online accounts statements that were prepared by Theye.

25.    Further, in the Purchase Agreements, it states that the RYCO Group's and First RYCO's objectives are to manage their members' funds and provide up to two percent monthly

gains as to RYCO Group pool participants and one percent monthly gains as to First RYCO pool

participants with the excess over those amounts being distributed to the Operating Manager (i.e.,

Theye) as his management fee.

**D.    Theye Made False and Misleading Statements And Advertisements For Solicitation Purposes**

26.    Beginning in December 2005 with respect to the RYCO Group, and March 2006

with respect to First RYCO, Theye solicited pool participants and prospective pool participants

to invest, or remain invested, in the RYCO pools through (a) face-to-face meetings at his church

in Austin, Texas, and (b) promotional advertisements, including flyers and newsletters.

27.    During the relevant period, to induce pool participants and prospective pool

participants to invest, or remain invested, in RYCO Group, Theye promised, during face-to-face

meetings at his church, among other places, that:

      a.    he would trade, among other things, futures on their behalf as members of the pool;

      b.    they would receive the first two percent of monthly gains on their investment, and that he would receive the gains above two percent; and

      c.    he was only authorized to raise $5,000,000 in funds for RYCO Group and that after that amount was raised he would be unable to accept new funds.

28.    Likewise, during the relevant period, to induce pool participants or prospective

pool participants to invest, or remain invested, in First RYCO, Theye promised, during face-to-

face meetings at his church, among other places, that:

      a.    he would trade, among other things, futures on their behalf as members of the pool; and

      b.    they would receive the first one percent of monthly gains on their investments, and that Theye would receive the gains above one percent.

29.    During the relevant period, Theye prepared and distributed flyers to members of

the general public at, among other places, his church, encouraging individuals and organizations

to invest in the RYCO Group "fund", or the First RYCO "fund", by promising, among other things, that,

    a. Pool participants' money would be "[i]nvested in the commodity and equity markets";

    b. "Investors" would receive, depending upon which RYCO pool they invested, either the first two percent (RYCO Group) or one percent (First RYCO) of "gains calculated monthly"; and

    c. "Management" would only accumulate gains above the first two percent for the RYCO Group, and above the first one percent for First RYCO, such gains would be "calculated monthly", and would "not be paid" if the respective pool "fails to perform."

30.    In these flyers, Theye went so far as to encourage pool participants and prospective pool participants to roll funds from their 401(k)s, IRAs and Pension Funds into the RYCO pools. Indeed, in a further attempt to legitimize the fraudulent operations of RYCO Group and First RYCO, Theye stated in the flyers that "Fiserv Trust, one of the largest pension/IRA custodial firms in the United States with over 300,000 self directed IRA clients, will provide administration services" and that "if you have 401(k), IRA Transfers/Rollovers/ Conversion Pension Funds, you may easily transfer your assets to Fiserv Trust."

31.    The statements set forth in paragraphs 26 through 29 above are materially false and misleading because:

    a. Theye did not trade futures or invest RYCO Group participants' money in the commodity markets prior to September 2006 since RYCO Group had no trading accounts at any FCMs until that time;

    b. Likewise, Theye did not trade futures or invest First RYCO participants' money in the commodity markets prior to August 2009 since First RYCO had no trading accounts at any FCMs until that time;

    c. Theye took managements fees out of the RYCO pools even though pool participants of RYCO Group and First RYCO had not earned monthly returns of two percent and one percent, respectively; and

    d.  Theye did not use the majority of pool participant money to trade in any market but rather used the money to pay other investors false "profits" to perpetuate the Ponzi scheme.

32.    In January 2009, Theye created and, thereafter, distributed to pool participants and prospective pool participants via, among other means, electronic mail via the internet a "newsletter" entitled "The RYCO Report" with the headline: "RYCO reports performance for 2006-2008 average 30.4% gross return." The January 2009 report also represented:

> Ryco Group, LLC experienced its best investment and trading performance in 2008, yielding 24% to investors from a gross return of 31.21%. Investors in Ryco received an average of 23.84% over the ***past three full years of performance*** tracking, just short of the investment's objective of 24% annually. The average gross return was 30.40% in 2006-2008. (Emphasis added).

33.    These statements are materially false and misleading because: (1) RYCO Group had no trading accounts at any FCMs until September 2006 and, therefore, could not have generated a profit during the first half of 2006; and (2) during the time that the RYCO Group traded futures at RJO, Theye lost nearly $200,000 rather than made any profit.

34.    In May 2009, Theye created and distributed to pool participants and prospective pool participants via, among other means, electronic mail via the internet a "newsletter" entitled "The RYCO Report" with the headline "12% return per year available through First Ryco [] LLC", and representing:

    a.  "[First RYCO] offers a 40-month track record of successful performance paying 1% per month. Each investor also receives a monthly audited confirmation by an independent CPA firm of trading activity and profits, removing any doubt that 12% is 'too good to be true'";

    b.  "We have a 40 month track records of producing 1% per month for investors. We feel assured we will be able to give investors 1% for some time to come"; and

    c.  "Many positions are covered, or 'protected' by a corresponding option position against it – almost like an insurance policy. This reduces the profit potential, but it serves to limit or eliminate capital loss."

35.     These statements are materially false and misleading because: (1) First RYCO had no trading accounts at any FCMs until August 2009 and thus had no "track record" of producing any returns on investors' funds; (2) each investor did not receive a monthly audited confirmation by an independent CPA firm of trading activity and profits; (3) during the time that the First RYCO traded futures at RJO, Theye lost approximately $50,000; and (4) Theye never traded options in any of RYCO Group's or First RYCO's trading accounts at RJO.

36.     Theye made the representations regarding the RYCO pools set forth in paragraphs 26 through 34 above knowing them to be false or with reckless disregard as to their truth.

**E.     Theye Prepared and Distributed False and Fictitious Account Statements**

37.     Once pool participants purchased their membership interest in RYCO Group or First RYCO, Theye provided them with access to the RYCO pools' website, www.rycogroupllc.com, on which pool participants could access and view via the internet electronic account statements prepared by Theye that purported to show the net value of their interest in RYCO Group or First RYCO, as well as the profit or loss on their investment.

38.     Beginning in at least January 2006, the account statements for pool participants in the RYCO Group consistently reflected that the pool participants' interests in RYCO Group profited at a rate of two percent per month.

39.     Beginning in at least April 2006, the account statements for pool participants in First RYCO consistently reflected that the pool participants' interests in First RYCO profited at a rate of one percent per month.

40.     These electronic account statements are false because from January 2006 to August 2006 for the RYCO Group and April 2006 to July 2009 for First RYCO, the RYCO pools did not have any trading accounts at FCMs and, therefore, Theye did not trade futures or

invest on behalf of RYCO pool participants during these periods.  Further, during the months in which Theye traded futures on behalf of the RYCO pools, RYCO Group suffered trading losses in 25 of the 31 months that its funds were traded, and First RYCO suffered losses in the two months that is funds were traded.  Indeed, the following table demonstrates the cumulative net out-of-pocket losses (including related commissions and fees) for the RYCO pools for the end of the years 2006 to 2009:

| ACTIVITY DATE | RYCO NET OUT-OF-POCKET CUMULATIVE GAIN (LOSS) | FIRST RYCO NET OUT-OF-POCKET CUMULATIVE GAIN (LOSS) |
|---|---|---|
| DEC 2006 | ($24,742.00) | $0 (No Accounts) |
| DEC 2007 | ($39,941.08) | $0 (No Accounts) |
| DEC 2008 | ($100,452.86) | $0 (No Accounts) |
| DEC 2009 | ($195,442.98) | ($52,832.16) |

41.     Theye made the representations in the account statements knowing them to be false or with reckless disregard as to their truth.

**F.     Theye Orchestrated the Micind Fraudulent Scheme**

42.     In or about April, 2009, Theye approached a pool participant of RYCO Group, ("Investor X"), with an investment opportunity with Micind.  Theye proposed that he would manage Investor X's funds through his company, Micind, without the two percent per month cap on Investor X's profits (like in RYCO Group) and that Theye and Investor X would split the profits and/or losses evenly.  Thereafter, between April and July, 2009, Investor X invested $900,000 with Micind.

43.     On June 11, 2009, Theye, as President of Micind, entered into a Joint Venture Agreement with Investor X spelling out the details of this new investment in Micind.  The purpose of the joint venture was to "conduct Futures, Stocks, Options and Forex trading" through Micind.

44.     Pursuant to the terms of the Joint Venture Agreement, Investor X was to supply the capital for the partnership.  The net profits would be "divided equally between [Investor X] and Micind," and the net losses would be "born equally by them[,]" up to the amount of Investor X's capital contribution.

45.     The Joint Venture Agreement also provided:  "Micind . . . will be solely responsible for conducting trading and business activities and reporting profits/losses to Partner [Investor X ] Monthly and quarterly.  [Investor X] will be provided a quarterly audited report of all trading activity in all related trading accounts."

46.     Micind had commodity trading accounts at two FCMs, MF Global and Dorman Trading, L.L.C. ("Dorman").  Investor X's money was not deposited into either of these accounts, and, in fact, Theye, through Micind, never conducted trading on Investor X's behalf as promised in the Joint Venture Agreement.

47.     In October 2009, Theye provided to Investor X via facsimile a document purporting to be a monthly account statement issued by Dorman (the "Dorman Statement"), reflecting that Investor X's $900,000 in payments to Micind had been deposited into the Dorman trading account for Micind  and was earning a profit.

48.     The "Dorman Statement" is false and fictitious.  Dorman never prepared it. Rather, Theye produced it and sent it via interstate wire to Investor X and/or Investor X's agents

to maintain the illusion that Investor X's money was being used to trade futures and that the trading was profitable, when, in fact, no such trading was conducted and no such profits realized.

49.     Defendants made the representations in the Joint Venture Agreement and in the Dorman Statement knowing them to be false or with reckless disregard as to their truth.

50.     On information and belief, the $900,000 Investor X invested in Micind was used by Theye to further his ongoing Ponzi scheme with respect to the RYCO pools, *i.e.*, paying out false monthly "profits" to the RYCO pools participants.

## VI. <u>VIOLATIONS OF THE ACT AND REGULATIONS</u>

### <u>COUNT ONE</u>

### <u>Fraud By Commodity Pool Operator</u>

**(Violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006),
and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2009))
(*Against Defendant Richard D. Theye*)**

51.     Paragraphs 1 through 41 are realleged and incorporated herein.

52.     Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006), prohibits CPOs from using the mails or any other means of interstate commerce to:

      (A) employ any device, scheme, or artifice to defraud any participant
           or prospective participant; or

      (B) engage in any transaction, practice, or course of business that
           operates as a fraud or deceit upon any participant or prospective
           participant.

53.     Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2009), provides that no CPO may advertise in a manner that:

      (1) Employs any device, scheme or artifice to defraud any participant or prospective
           participant; or

      (2) Involves any transaction, practice, or course of business which operates as a fraud
           or deceit upon any participant or any prospective participant.

54.     During the relevant period, Theye acted as a CPO by soliciting, accepting or receiving funds from others and engaging in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in futures.

55.     As set out in paragraphs 1 through 41, during the relevant period, Theye employed a device, scheme or artifice to defraud futures pool participants and prospective pool participants or engaged in a transaction, practice or course of business, including through (1) misappropriating the funds received from the pool participants to trade futures to pay out false "profits" to other victims of the Ponzi scheme; (2) soliciting pool participants and prospective pool participants to invest, or remain invested, in the RYCO pools through making materially false and misleading statements and omissions in face-to-face meetings at church, among other places, and in advertising in flyers and newsletters, including, among other things, misrepresentations and omissions regarding the RYCO pools' and Theye's past and current trading performance and trading activity; and (3) issuing false and fictitious monthly account statements, all which operated as a fraud or deceit upon the pool participants and prospective participants in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006) and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2009).

56.     Each misrepresentation or omission of material fact, actual or attempted act to cheat, defraud, or deceive, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2009).

## COUNT TWO

### Fraud in Connection with a Futures Contract

**(Violations of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. 6b(a)(2)(i)-(iii) (2006) (For Conduct Prior to June 18, 2008) and Section 4b(a)(1)(A)-(C) of the Act, as Amended by the CRA, to be codified in 7 U.S.C. 6b(a)(1)(A)-(C) (For Conduct On Or After June 18, 2008))**
*(Against Defendant Richard D. Theye)*

57.     Paragraphs 1 through 41 are realleged and incorporated herein.

58.     It is a violation of the Act and Act, as amended by the CRA, for any person, in or in connection with any order to make, or the making of, any on-exchange futures contract, for or on behalf of any other person: (i) to cheat or defraud or attempt to cheat or defraud such other person; (ii) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof; or (iii)  willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act or agency performed with respect to such order or contract for such person.  Section 4b(a)(2)(i), (ii), and (iii), 7 U.S.C. §§ 6b(a)(2)(i), (ii), (iii) (2006) (with respect to conduct before June 18, 2008); and Section 4b(a)(1)(A), (B) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A), (B), and (C) (with respect to conduct on or after June 18, 2008).

59.     As set out in paragraphs 1 through 41, during the relevant period, Theye cheated and defrauded and attempted to cheat and defraud, and willfully deceived and attempted to deceive, commodity futures pool participants and commodity futures prospective pool participants in connection with futures contracts by: (1) misappropriating the funds received from the pool participants to trade futures for his own personal benefit and/or to pay out false "profits" to other victims of the Ponzi scheme; (2) soliciting pool participants and prospective

pool participants to invest, or remain invested, in the RYCO pools through making materially false and misleading statements and omission in face-to-face meetings and in advertising in flyers and newsletters, including, among other things, misrepresentations and omissions regarding the RYCO pools' and Theye's past and current trading performance and trading activity; and (3) issuing false and fictitious monthly account statements, all in violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006) (with respect to acts occurring before June 18, 2008), and Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified in 7 U.S.C. § 6b(a)(1)(A)-(C)  (with respect to acts occurring on or after June 18, 2008).

60.     Each material misrepresentation or omission, false report or statement, or misappropriation including, but not limited, to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006) (with respect to acts occurring before June 18, 2008), and Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified in 7 U.S.C. § 6b(a)(1)(A)-(C)  (with respect to acts occurring on or after June 18, 2008).

### COUNT THREE

### Fraud in Connection with a Futures Contract

**(Violations of Sections 4b(a)(1)(A)-(C) of the Act, as amended by the CRA,
to be codified in 7 U.S.C. § 6b(a)(1)(A)-(C))**
***(Against Defendants Richard D. Theye and Micind Capital Management, Inc.)***

61.     Paragraphs 1 through 50 are realleged and incorporated herein.

62.     Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified in

7 U.S.C. § 6b(a)(1)(A)-(C), makes it unlawful

> for any person, in or in connection with any order to make, or the
> making of, any contract of sale of any commodity in interstate

commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . . (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

63.     As set out in paragraphs 42 through 50, during the relevant period, Defendants cheated and defrauded and attempted to cheat and defraud, and willfully deceived and attempted to deceive, Investor X in connection with futures contracts by: (1) misappropriating Investor X's funds and using those funds to pay out false "profits" to victims of the Ponzi scheme conducted through the RYCO pools; (2) falsely representing in a joint venture agreement that, in exchange for Investor X's capital contributions to Micind, Defendants would "conduct" "trading" on Investor X's behalf in futures, stocks, options and forex, when, in fact, no such trading was conducted; and (3) and making or causing to be made false account statements and issuing those false account statements to Investor X, in violations of Sections 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified in 7 U.S.C. §§ 6b(a)(1)(A)-(C).

64.     Theye, as an agent and officer of Micind, committed the acts and omissions described in paragraphs 42 through 50 above within the scope of his employment and office with Micind.  Micind therefore is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. 1.2 (2009), for Theye's acts and omissions in violation Sections 4b(a)(1)(A)-(C) of the Act, as amended by the CRA.

65.     Each misappropriation, misrepresentation or omission of material fact, actual or attempted act to cheat, defraud, or deceive, including but not limited to those specifically alleged

herein, is alleged as a separate and distinct violation of Sections 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified in 7 U.S.C. §§ 6b(a)(1)(A)-(C).

## COUNT FOUR

### Failure to Register As a Commodity Pool Operator

**(Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006))**
***(Against Defendant Richard D. Theye)***

66.    Paragraphs 1 through 41 are realleged and incorporated herein.

67.    Section 4m(1) of the Act, 7 U.S.C § 6m(1) (2006), provides that it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as a CPO.

68.    Theye does not qualify for a registration exemption under either the Act or Regulations.

69.    As set out in paragraphs 1 and 41, during the relevant period, Theye has used the mails or instrumentalities of interstate commerce in or in connection with his business as the CPO of the RYCO pools while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

## VII.  RELIEF

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

(A)    An order finding that Theye (1) violated Sections 4o(1) and 4m(1) of the Act, 7 U.S.C. §§ 6o(1) and 6m(1) (2006); (2) violated Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006) (for conduct prior to June 18, 2008), and Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified in 7 U.S.C. § 6b(a)(1)(A)-(C) (for conduct on or after June 18, 2008); and (3) Regulation 4.41(a), 17 C.F.R. §§ 4.41(a) (2009);

(B)    An order finding that Defendant Micind violated Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified in 7 U.S.C. § 6b(a)(1)(A)-(C);

(C)    An order of permanent injunction prohibiting Theye and Micind and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with either of them, including any successor thereof, from, directly or indirectly,

1.  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));

2.  Entering into any transactions involving futures, options, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (commodity options), and/or foreign currency (as described in Section 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the by the CRA, to be codified in 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) (forex contracts) for their own personal account or for any account in which they have a direct or indirect interest;

3.  Having any futures, options, commodity options, and/or forex contracts traded on their behalf;

4.  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving futures, options, commodity options, and/or forex contracts;

5.  Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any futures, options, commodity options, and/or forex contracts;

6.   Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

7.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)(2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

(D)   An order directing Theye and Micind, as well as any other person or entity associated with them, including any successor thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act, Act as amended by the CRA or Regulations, as described herein, and interest thereof from the date of such violations;

(E)   An order directing Theye and Micind, as well as any other person or entity associated with them, including any successor thereof, to make full restitution, pursuant to such procedure as the Court may order, to every pool participant whose funds were received by them as a result of acts and practices which constitute violations of the Act, Act as amended by the CRA and Regulations, as described herein, and interest thereon from the date of such violations;

(F)   An order imposing upon Theye and Micind a civil penalty pursuant to § 6c(d)(1), 7 U.S.C. 13a-1 (2006) and Regulation 143.8, 17 C.F.R. § 143.8 (2009); and

(G)   An order for such other and further remedial ancillary relief as the Court may deem appropriate.

June 1, 2010                          Respectfully submitted,

                                      PLAINTIFF UNITED STATES COMMODITY
                                      FUTURES TRADING COMMISSION


                                      Kathleen M. Banar, Chief Trial Attorney
                                      (Ill. Bar No. 6200597)
                                      *kbanar@cftc.gov*

                                      James W. Deacon, Senior Trial Attorney
                                      (Va. Bar No. 43984)
                                      *jdeacon@cftc.gov*

                                      United States Commodity Futures Trading
                                      Commission
                                      Division of Enforcement
                                      1155 21st Street, NW,
                                      Washington, D.C. 20581
                                      Telephone:  (202) 418-5000
                                      Fax:  (202) 418-5531